515 A.2d 485

**OCEAN HIDEAWAY CONDOMINIUM ASSOCIATION, et al.**

v.

**BOARDWALK PLAZA VENTURE.**

No. 47, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Oct. 9, 1986.

K. King Burnett (Webb, Burnett, Jackson, and Corn-brooks & Wilber, on brief), Salisbury, for appellants.

Raymond S. Smethurst, Jr. (Fletcher P. Thompson, and Adkins, Potts & Smethurst, on brief), Salisbury, for appellee.

Argued before BISHOP and BELL (ROSALYN B.), JJ., and GETTY, (JAMES S.), Associate Judge of the Court of Special Appeals (retired), specially assigned.

BISHOP, Judge.

Ocean Hideaway Condominium Association and a number of its members and unit owners appeal the decision of the Circuit Court for Worcester County. The court affirmed, on appeal, a zoning decision made by the Ocean City Board of Zoning Appeals (the Board), which would permit appellee, Boardwalk Plaza Venture, to construct a seventeen story building on land at the Ocean City Boardwalk between 17th and 18th Streets.

## FACTS

Appellants' condominium building is located between 18th and 19th Streets, immediately north of the intended location of the proposed building. In contrast to the location of the high-rise structures in north Ocean City, beginning at 88th Street, the location of the proposed building would be in the southern or older part of Ocean City. This area is zoned R–3, which permits buildings with a maximum height of 45 feet.

In accordance with the introductory paragraph and Subsection C of § 105–122, entitled Special Exceptions, of the Ocean City Code, appellee applied for a Special Exception from the 45 foot height limitation, to permit the construction of a building 145 feet high. Including the actual building itself, the required parking and the setback requirement, the utilized area would cover the entire square block bordered by the Boardwalk on the east, 17th and 18th

Streets on the south and north, respectively, and Baltimore Avenue on the west.

A public hearing on the application inexplicably started shortly before midnight on November 29, 1984, and concluded in the early morning hours of November 30, 1984. At the conclusion of the hearing, the Board voted unanimously to grant the special exception. This action was reduced to writing in a document which contained a summary of the Board's action and its "Findings of Fact" as follows:

BOARD OF ZONING APPEALS

Ocean City, Maryland

November 29, 1984

BZA 877

Applicant: Boardwalk Plaza Venture

The Board of Zoning Appeals, by unanimous vote, Grants your appeal as requested, under Section 105–122C, Special Height Exceptions, to permit an overall building height of one-hundred and forty-five (145) feet, instead of the maximum of forty-five (45) feet as provided under Section 105–87 Height, Area and Bulk Regulations (R–3) District. The purpose of the appeal is to permit construction of a seventeen (17) story apartment building consisting of sixteen (16) living levels and one parking level below. The site of the appeal is described as all of Block 62 of the Sinepuxent Beach Company Plat, further described as abutting the eastern boundry [sic] of Atlantic Avenue, (Boardwalk) between 17th and 18th Streets and lots 11 and 12, Block 4, Sinepuxent Beach Company Plat, further described as the northwest intersection of 18th Street and Baltimore Avenue, in the Town of Ocean City, Maryland.

FINDINGS OF FACT

1. Due to the location, size, layout and principal use, traffic to and from the building will not be hazardous or

unreasonably inconvenient to the neighborhood nor will it duly conflict with the normal traffic of the neighborhood.

2. The proposed building will not have an unreasonably detrimental effect upon the neighboring property or the neighboring area in general nor will it impair the value of the neighboring property.

3. The existing sanitary and storm water sewer systems are adequate to meet the demands created by the proposed building and the sanitary sewer system of the proposed building is adequate to meet the demands of the use of said building.

4. The public water system of the proposed building are [sic] adequate to meet the needs of both fire extinguishment and domestic consumption.

5. The present location of firehouses and their equipment is such that the protection afforded by said firehouses and equipment is adequate and reasonably available to the site of the proposed building.

6. Adequate police protection is available.

7. The proposed building will not cast excessive shadows upon adjacent public or private properties.

8. The proposed building will not unreasonably interfere with the circulation of air and access of light to adjacent privately owned properties.

9. The proposed use of said building and the height thereof is in harmony with the orderly development of the zoning district in which it is situated.

The applicant has established that the standards of Section 105–122 Subsection C(1) & C(2), of the Ocean City Code, Special Height Exceptions are substantially met.

Appellants raise three issues;[1] however, because our decision on the first and second issues will be dispositive of the appeal, we will address only those issues:

---

**1.** The following is the third issue raised by appellants:
III. The applicant did not meet its burden of proof (a) that the building at the proposed height, location and size is in harmony

I. Whether the Board made adequate findings of fact as required by Ocean City Code § 105–122C(3) and whether it conformed with the requirements of Md.Ann.Code, art. 66B, § 1.00.

II. Whether the special exception should have been denied because the uncontradicted evidence shows that the building will cast shadows on both public and private property during most of the hours and on all the dates set out in the ordinance.

## I.

### *The Board's "Findings of Fact"*
### A.

### *Ocean City Code*

■ Section 105–122C(3) of the Ocean City Code provides:

"... the Board of Appeals in its decision shall render a finding of fact on each of the nine (9) standards stated in Subsection C(2) above."

In addition, the introductory paragraph of Section 105–122 provides that the Board may grant a special exception if

"in its opinion, as a matter of fact, such exceptions will not substantially affect adversely the uses of the adjacent and neighboring property under the terms of this Chapter."

The Board did address the nine standards; however, it did not render a finding of fact in each of them, which is what § 105–122C(3) requires.

---

with the appropriate and orderly development of this district, (b) that it does not have an unreasonably detrimental effect upon neighboring area in general, (c) that it is compatible with the existing neighborhood, (d) that it does not unreasonably interfere with the circulation of air and the access of light to adjacent privately owned properties and (e) that there are adequate public facilities to service and protect it.

In *Montgomery v. Bd. of County Comm'rs,* 256 Md. 597, 261 A.2d 447 (1970), the court considered the provision in the Prince George's County Code:

> "59–104.   In Prince George's County, no application for a map amendment or special exception, which is contested, shall be granted or denied except upon written findings of basic facts and written conclusion."

The Board of County Commissioners granted a requested rezoning based upon a Summary of Reasons from the Technical Staff who, in turn recommended the rezoning that had been approved by the Planning Board.   The Court remanded the case because there "were no findings of fact or conclusion" upon which determination of mistake in the original zoning or changes in the neighborhood could be based.   The Court made it clear that the statute required written findings of fact which, if not contained in the record, could not be supplied by either the circuit court or any appellate court.   *Id.* 603–04, 261 A.2d 447.

Even in the absence of a statutory requirement for written findings of fact, where findings of fact are not in the record, the Court has remanded for the purpose of making such findings.   In *Baker v. Board of Trustees,* 269 Md. 740, 309 A.2d 768 (1973), where there was no such statutory requirement and where the record not only disclosed no findings of fact but also an outright refusal on the part of the agency to make such findings when requested, the Court said:

> "As long ago as *Adams v. Board of Trustees,* 215 Md. 188, 195, 137 A.2d 151, 155 (1957), we reversed, as not supported by the evidence, an action taken by the Board without a finding of fact, or an assignment of reasons for the result reached.   Only the circumstances that the record before us makes it clear that the Board could have reasonably reached the result which it did, *Heaps v. Cobb, supra,* 185 Md. [372] at 380, 45 A.2d [73] at 76 [1945], saves this case from a similar fate.   To be certain that the teaching of *Adams* is not again overlooked, we pro-

pose to remand, for appropriate findings of fact, any case which hereafter reaches us in the posture of this one.

This is no more than a recognition of the fundamental right of a party to be apprised of the facts relied upon by the agency, *Blue Bird Cab Co. v. Department of Employment Security*, 251 Md. 458, 466, 248 A.2d 331, 335 (1968) and, even in the absence of a statutory provision, is frequently required by a court as an aid to judicial review, 2 Davis, *Administrative Law Treatise*, § 16.05 at 444–49 (1958); 2 Am.Jur.2d *Administrative Law* § 447 at 256 (1962), and cases cited. *See also* Code (1957, 1971 Repl.Vol.) Art. 41, § 254 which imposes this requirement on those agencies of the State which are subject to our Administrative Procedure Act.

The Zoning Board of Howard County denied a reclassification in *Pistorio v. Zoning Board*, 268 Md. 558, 302 A.2d 614 (1973), and made the following findings of "facts":

"1. The Petitioner's request is not in accordance with the General Plan of Howard County adopted on July 20, 1960.

"2. Petitioner's property is bounded on the eastern boundary by an R–A–1 District.

"3. Public water is presently available.

"4. Public sewer is not available and will not be available until fiscal year 1973–74 provided the current schedule is maintained.

"5. The subject property is bounded on the east by a stream valley which is shown on the General Plan as part of a stream valley park.

"6. The rezoning request if granted will have an adverse effect on vicinal properties to the east.

"7. That while a problem exists with proper utilization of the 200 foot strip abutting the subject property and U.S. Route 1 in its present classification, it appears that it would be more reasonable to request a zoning change of

that parcel to R–12 so that an overall plan for R–12 development could be made for both parcels."

268 Md. at 566–67, 302 A.2d 614.

The Court, after noting that the Howard County Code required every decision in a zoning matter to be "accompanied by findings of fact and conclusions of law", stated:

"We think this section requires the Board to provide citizens with something more than the travesty uttered here."

*Id.* at 570, 302 A.2d 614. The Court remanded and observed that the circuit court should have remanded and directed the Board "to do a proper job." *Id.* at 570, 302 A.2d 614.

In *Turner v. Hammond,* 270 Md. 41, 310 A.2d 543 (1973), the Court remanded and directed that the denied special exception be granted. The *Turner* Court observed that:

"The 'reasons' given by the Board for denying the application suggests a rather cavalier attitude in respect of its duties and responsibilities. It made no findings of fact worthy of the name and we think citizens are entitled to something more than a boiler-plate resolution." (Citation omitted).

The resolution adopted in *Turner* by the Board of Zoning Appeals of Wicomico County was on a prepared form which we set out here:

"Upon a motion by <u>Verdin Cantrell</u> seconded by <u>Walter Phillips</u> and duly carried, the Board <u>denied</u> the request for a Special Use Exception in the within case and as its reason for so doing states as follows:

" 'We find from a preponderance of the evidence that the proposed use of this property for an apartment project consisting of 197 units

1.   will ~~or will not~~ substantially affect adversely the uses of adjacent and neighboring property;

2.   will ~~or will not~~ substantially affect adversely persons residing, studying, working, or otherwise occupying lands or buildings adjoining or in the vicinity of the project area;

3. ~~will or~~ will not be compatible with the character and use of buildings adjoining or in the vicinity of the project;

4. will ~~or will not~~ affect adversely the safe and efficient movement of traffic in and through the area by use of existing street patterns;

5. has or has not been so designed to minimize adverse effects on adjacent properties and the surrounding neighborhood;

6. ~~that public utilities can or cannot economically be extended to the site of the project;~~

6. ~~7.~~ that development in the neighborhood since the zone plan and ordinance were adopted has not been such as to promote a change toward the proposed type of development.

"Thus by virtue of the requirements of Section 54 of the Ordinance No. 789 of the City of Salisbury, Maryland, the above findings require that the Special Use Exception be denied.

/s/ Michael J. Hynes /s/ Oris W. Horsey, Sr."

This form, which the Court found so objectionable in *Turner*, contained nothing more than a recitation of the factors which the Board was required to consider.

■ When we compare the "findings of fact" in the case *sub judice* with those in *Turner* and *Pistorio*, we conclude that those in the former suffer from the same deficiencies as those in the latter. In the case *sub judice*, the Board states its conclusions under each of the nine categories without any factual findings whatsoever. Each of the one sentence conclusions contains nothing more than a positive statement of each of the conditions precedent to the approval by the Board of the special exception. The result of the granting of the special exception in this case would permit the construction of a building 100 feet higher than is now permitted, an increase of three times the permitted height. The citizens of Ocean City are entitled to more than the

perfunctory disposition which the Board made of this important zoning case.

## B.

### Md.Ann.Code Article 66B

Section 1.00 of Article 66B[2] contains the following definition:

"Special exception" means a grant of a specific use that would not be appropriate generally or without restriction and shall be based upon a finding that certain conditions governing special exceptions as detailed in the zoning ordinance exist, that the use conforms to the plan and is compatible with the existing neighborhood.

In neither the "Findings of Fact" nor in the preamble of the written decision of the Board is there any reference at all relating to the conformance of the special exception with the plan which, in the same section of Article 66B, is defined as follows:

"*Plan*" means the policies, statements, goals, and interrelated plans for private and public use, transportation, and community facilities documented in texts and maps which constitute the guide for the area's future development. For the purposes of this definition the word "plan" shall include general plan, master plan, comprehensive plan, community plan, and the like as adopted in accordance with §§ 3.01–3.09 of this article.

■ Finally, we will address appellee's three attempts to distinguish *Turner v. Hammond.* First, appellee contends that there is no requirement that the Board must set out in its findings of fact a discussion of all of the evidence. We agree; however, the circuit court should have found that the Ocean City Code requires more than the conclusory

---

2. Article 66B applies state-wide and provides for zoning in Baltimore City and unincorporated towns of the State with less than 10,000 in population. *Scrivner v. Baltimore,* 191 Md. 165, 167, 60 A.2d 190 (1948).

statements made by the Zoning Board in this case. Our holding today is buttressed with the clear fiat laid down in *United Steel Workers v. Bethlehem Steel,* 298 Md. 665, 472 A.2d 62 (1984), wherein the Court stated:

> "Judicial review of administrative action differs from the appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings *and for the reasons stated by the agency.* (emphasis supplied) (citations omitted).

*Id.* at 679, 472 A.2d 62.

Also, the Supreme Court in *Burlington Truck Lines v. United States,* 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) found that:

> "Expert discretion is the lifeblood of the administrative process, but 'unless we make the requirements of administrative action strict and demanding, *expertise,* the strength of modern government, can become a monster which rules with no practical limits on discretion.' " (emphasis in original) (citation omitted).

Second, appellee interprets *Turner* as a decision which reversed the zoning authority because there was no factual support for the Board's findings, not because its findings of fact were inadequate. This was the holding of the Court; however, we cannot disregard the thoughtful and apposite statement at 270 Md. 41, 57, 310 A.2d 543 that:

> "[The Board] made no findings of fact worthy of the name and we think citizens are entitled to something more than a boiler-type resolution."

■ Moreover, appellee's attempt to delve into the record for specific facts to support the Board's conclusions actually serves to support our holding that the factual findings

were not made by the Board. Neither the circuit court nor this Court may supply these facts, 298 Md. at 679, 472 A.2d 62, and there is no way that they can be supplied by a party.

We find the following statement from Anderson, *American Law of Zoning*, § 16.41, adopted by this Court in *Gough v. Board of Zoning Appeals*, 21 Md.App. 697, 702, 321 A.2d 315 (1974) to be *apropos:*

"Given express findings, the court can determine whether the findings are supported by substantial evidence, and whether the findings warrant the decision of the board. If no findings are made, and if the court elects not to remand, its clumsy alternative is to *read* the record, *speculate* upon the portions which probably were believed by the board, *guess* at the conclusions drawn from credited portions, construct a *basis* for decision, and try to *determine* whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, and the latter becomes a relatively inefficient instrument for the construction of a record." (emphasis in original).

Third, appellee argues that the *Turner* Court was most perturbed by the zoning authorities' use of a printed form and that in the case *sub judice* the Board did not use a form; therefore, *Turner* is inapposite. We do not agree. Although the Ocean City Board did not use a prepared printed form, the method it used and the content of its "Findings of Fact" amount to a simple repetition of the nine statutory requirements and nothing more.[3] But for our

---

3. The following is the "findings of fact" rendered by this same Ocean City Zoning Board in another case presently on appeal to this Court, *Esposito v. Victorian Building Associates,* No. 127 (Md.Ct.Spec.App., 1986 Term):

FINDINGS OF FACT

1. Due to the location, size, layout and principal use, traffic to and from the building will not be hazardous or unreasonably inconvenient to the neighborhood nor will it unduly conflict with the normal traffic of the neighborhood.

2. The proposed building will not have an unreasonably detrimental effect upon the neighboring property or the neighboring

holding on the next issue, we would have remanded. *Turner* and *Pistorio,* both *supra.*

## II.

### *Shadows on the Beach*

■ Appellants next contend that the special exception should have been denied because the uncontradicted evidence showed that the proposed seventeen story building will cast shadows on both public and private properties during the dates and times delineated in the Ocean City Code. We agree.

In pertinent part, the Code provides:

C. Special height exceptions.

---

area in general nor will it impair the value of the neighboring property.

3. The existing sanitary and stormwater sewer systems are adequate to meet the demands created by the proposed building and the sanitary sewer system of the proposed building is adequate to meet the demands of the use of said building.

4. The public water system and the water system of the proposed building are adequate to meet the demands of both fire extinguishment and domestic consumption.

5. The present location of firehouses and their equipment is such that the protection afforded by said firehouses and equipment is adequate and reasonably available to the site of the proposed building.

6. Adequate police protection available.

7. The proposed building will not cast shadows substantially greater than a fifty (50) foot building located on the same site.

8. The proposed building will not unreasonably interfere with the circulation of air and access of light to adjacent privately owned properties.

9. The proposed building will have adequate side yard setbacks for the height proposed.

10. The proposed use of said building and the height thereof is in harmony with the orderly development of the zoning district in which it is situated.

The applicant has established that the standards of Section 105–122 Subsection C(1) & (2), of the Ocean City Code, Special Height Exceptions are substantially met.

We cannot help but notice the remarkable similarity between the above findings of fact and the findings issued by the Board in the case *sub judice* which indicates that while no "printed form" is used, it is a form nonetheless.

(1) ... an exception to the height regulations and restrictions is permitted, provided that the Board of Appeals finds that the following conditions and standards are met:

.    .    .    .    .

(g) that the proposed building will not cast shadows upon property belonging to other private individuals or owned publicly, between the hours of 10:00 a.m. and 4:00 p.m. from June 1 through September 7.

The Code then provides that the special exception shall be granted if the standards have been "substantially met by the applicant." Ocean City Code § 105–122C(3). In essence, the Code requires an affirmative finding of fact that the building will not cast a shadow on property, public or private, during the six hour period between 10:00 a.m. and 4:00 p.m. from June 1 through September 7.

The Code's stringent shadow requirement, at least as to public property, is directed to preserving Ocean City's greatest asset—the beach. The "Comprehensive Plan of Ocean City, Maryland" states in pertinent part:

The greatest recreational facility in Ocean City, the beach, is already publicly owned for most of its length. It is this facility, supplemented by the boardwalk, another public facility, which gives the numerous private recreational facilities and other commercial enterprises their value. Few would drive 200 miles to patronize a penny arcade, an amusement park or even a golf course. But such enterprises thrive when associated with a freely available major attraction that makes the 200 mile trip a vacation.

In *Neuman v. City of Baltimore*, 23 Md.App. 13, 325 A.2d 146 (1974) Chief Judge Gilbert succinctly stated the applicable law when reviewing a zoning board's decision:

The general rule is that the action of a zoning board will not be reversed on appeal if there is "substantial evidence" in the record to support the board's finding. *Luxmanor Citizens v. Burkart,* 266 Md. 631, 647, 296 A.2d 403 (1972). If such evidence does exist in the

record, the matter is considered to be "fairly debatable", and the courts may not substitute their judgment for that of the board which is presumed to exercise a degree of expertise in zoning. *Agneslane Inc. v. Lucas,* 247 Md. 612, 233 A.2d 757 (1967); *Board v. Oak Hill Farms,* 232 Md. 274, 192 A.2d 761 (1963); *Largo Civic Ass'n v. Pr. Geo's Co.,* 21 Md.App. 76, 90, 318 A.2d 834 (1974). On the other hand, where the action of the board is not supported by substantial evidence the board's decision cannot be said to be "fairly debatable." Under those circumstances the board's finding falls into the category of being arbitrary, capricious and a denial of due process of law. *Dundalk Holding Co. v. Horn,* 266 Md. 280, 283, 292 A.2d 77, 78–79 (1972).

*Id.* at 14, 325 A.2d 146.

The undisputed evidence in the case *sub judice,* from both appellants' and appellee's experts, shows that the proposed building would violate the shadow requirement each and every day of the period June 1 through September 7. In fact, at the beginning of the period, June 1, the requirement would be violated two-thirds of the time. By the period's end, September 7, the requirement would be violated 100% of the time. Based on the foregoing, there is no "substantial evidence" to support the Board's finding that the shadow requirement was met. When a Board's finding cannot be said to be "fairly debatable", it is arbitrary, capricious and a denial of due process of law. *E.g., Turner v. Hammond,* 270 Md. 41, 54–55, 310 A.2d 543 (1973); *Dundalk Holding Company v. Horn,* 266 Md. 280, 283, 292 A.2d 77 (1972).

We hold, therefore, that the Code requirements of § 105–122(C)(1) were not substantially met and the Board's decision being arbitrary and capricious should have been reversed by the trial court.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR REMAND TO THE BOARD OF ZONING APPEALS WITH DIRECTION THAT THE SPE-

CIAL EXCEPTION BE DENIED; COSTS TO BE PAID BY
APPELLEE.